[Civ. No. 10070.  First Appellate District, Division Two.—August 26, 1936.]

FRANK H. AMES, Respondent, v. EMPLOYERS CASUALTY COMPANY (a Corporation), Appellant.

256

Cooley, Crowley & Supple and James F. Hoey for Appellant.

W. I. Gilbert, as *Amicus Curiae* on Behalf of Appellant.

Robert Collins, Harry M. Gross, Paul B. Richard and Jesse E. Nichols for Respondent.

STURTEVANT, J.—From a judgment in favor of the plaintiff the defendant has appealed. After the trial had been completed the plaintiff asked permission to file an amended complaint to conform to the proof. Having prepared that pleading and tendered it, he was given permission to file it. Later the trial court made findings in response to the pleadings then on file. The name of the insured is spelled differently in various places. We use his signature, J. W. Heldoorn, as being correct. Otherwise the findings were:

### "FINDINGS OF FACT.

"That it is true that at all times herein mentioned the above-named defendant has been and now is a corporation duly organized and existing under and by virtue of the laws of the State of Texas, and is duly qualified to do, conduct and transact business in the State of California, and was at all the times herein mentioned and now is engaged, among other activities in making and entering into agreement of automobile indemnity insurance, in favor of owners of automobiles, garages and repair shops in the State of California, and elsewhere, against liability for loss or damages suffered by others arising from and out of automobile acci-

dents and operation of and maintenance of garages and repair shops.

"II.

"That it is true that on or about the 4th day of April, 1934, and ever since, J. W. Heldoorn was, has been and now is the owner of a certain automobile, and of certain automobile garages and repair shops located at 1150 San Pablo Avenue, El Cerrito, California, and at 3038 San Pablo Avenue, Berkeley, California, and that on or about the said date the said J. W. Heldoorn applied to the said defendant at its office in San Francisco, California, for a policy of insurance to indemnify the said J. W. Heldoorn for the period of one year, against liability not to exceed the sum of Five thousand ($5000.00) dollars, together with taxed costs and interest, which should arise against the said J. W. Heldoorn, and in favor of any person who should sustain any bodily injuries or death through an accident by reason of the ownership, maintenance or use by the said J. W. Heldoorn of any automobile or of said automobile garages or repair shops; and to indemnify the said defendant, J. W. Heldoorn, for the period of one year, against liability not to exceed the sum of Ten thousand ($10,000.00) dollars, together with taxed costs and interest, where more than one person was injured or killed in the same accident by reason of the ownership, maintenance or use by the said J. W. Heldoorn of any automobile or of said automobile garages or repair shops.

"III.

"That it is true that thereafter and on or about the said 4th day of April, 1934, the said defendant duly accepted said application for said insurance and promised and agreed to cause the same to be written and on or about the 7th day of April, 1934, the said defendant duly issued and thereafter delivered to the said J. W. Heldoorn its policy of insurance wherein and whereby the said defendant, for a valuable consideration, did insure said J. W. Heldoorn for a period of one year from April 7th, 1934, to April 7th, 1935, against liability not to exceed the sum of Five thousand ($5000.00) dollars, together with taxed costs and interest which should arise against the said J. W. Heldoorn in favor of any person who should sustain bodily injuries or be killed through an accident by reason of the ownership

maintenance or use by the said J. W. Heldoorn of any automobile or of the automobile garages or repair shops located at 1150 San Pablo Avenue, El Cerrito, California, or at 3038 San Pablo Avenue, Berkeley, California; and did insure for a valuable consideration the said J. W. Heldoorn for a period of one year from April 7th, 1934, to April 7th, 1935, against liability not to exceed the sum of Ten thousand ($10,000.00) dollars, together with taxed costs and interest where more than one person was injured or killed in the same accident by reason of the ownership maintenance or use by the said J. W. Heldoorn of any automobile or of the automobile garages or repair shops located at 1150 San Pablo Avenue, El Cerrito, California, or at 3038 San Pablo Avenue, Berkeley, California.

"IV.

"That it is true that said agreement of automobile indemnity insurance and automobile garages and repair shops indemnity insurance made and entered into as aforesaid continued to be and was in full force and effect up to, and including the time of the accident and collision hereinafter referred to, as taking place on the fourteenth day of June, 1934.

"V.

"That it is true that said J. W. Heldoorn was at said time and ever since has been, and now is a resident of the County of Contra Costa, State of California.

"VI.

"That it is true that on or about the 14th day of June, 1934, said J. W. Heldoorn was operating and driving an automobile upon and along a highway in the City of Richmond, in the County of Contra Costa, State of California, and plaintiff, Frank H. Ames, was a guest in a certain automobile which was being driven by Alfred W. Wall upon and along an intersecting highway in said city; that said J. W. Heldoorn so carelessly and negligently operated said automobile that it was driven, made to run into and to collide with the automobile in which plaintiff was riding as a guest as aforesaid and as a direct and proximate result of the said carelessness and negligence of the said J. W. Heldoorn the plaintiff was thereby greatly injured, bruised and damaged; that thereafter plaintiff commenced and maintained an action in the Superior Court of the State of Cali-

fornia, in and for the County of Contra Costa, against J. W. Heldoorn for damages suffered by plaintiff by reason of said injuries to plaintiff; that thereafter, and after proceedings were duly had and taken in said action, the court gave, made and entered its judgment in favor of plaintiff and against said defendant, J. W. Heldoorn, for the sum of $2030.00 and costs taxed at $68.50; that said action was No. 19584 on the Register of Actions in the Clerk's office of said Court; that said Judgment was duly docketed in the Clerk's office of said Court on the 19th day of October, 1934, in Volume 42 of Judgments, at page 381; that said Judgment has become final and is wholly unpaid and unsatisfied.

"VII.

"That it is true that on the 14th day of June, 1934, and at all times since, said J. W. Heldoorn has been and now is wholly insolvent and unable to. pay said Judgment or any part thereof.

"VIII.

"That it is true that after the entry of said Judgment, there was issued out of the Clerk's office of said Court, under the seal thereof, in said action, a writ of execution directed to the Sheriff of Contra Costa County, that said writ of execution was thereafter delivered to said Sheriff and has been by said Sheriff returned to said Court wholly unsatisfied and unpaid.

"IX.

"That it is true that within the time required by said policy of insurance both J. W. Heldoorn and the plaintiff herein furnished to the defendants proof of loss and each of them duly performed all conditions precedent and otherwise performed all conditions of said policy of insurance on their part to be performed but notwithstanding said proofs of loss the defendant insurance company has refused to pay said loss and has denied absolutely any liability on said policy upon the ground, in addition to other defenses, that the said J. W. Heldoorn was himself driving the aforesaid automobile which caused the injury to the aforesaid Frank II. Ames, and that such driving was not a risk covered or indemnified against by the said insurance policy issued by the said defendant to the said J. W. Heldoorn.

## "X.

"That it is true that *if* any provision was placed in said policy forbidding or not covering the driving or use of said automobile by the said J. W. Heldoorn, the same was inserted without the authority of said J. W. Heldoorn, and contrary to his contract of insurance with the said defendant.

## "XI.

"That it is true that prior to the commencement of this action plaintiff demanded of the defendant the amount of its liability under its said agreement of indemnity insurance with said J. W. Heldoorn, but the defendant failed and refused and still fails and refuses to pay the amount of its liability or any part thereof.

## "XII.

"That it is true that the automobile, by which it is alleged in the complaint and in the amended complaint to conform to the proof, the injuries to the plaintiff were caused at the time of the collision alleged in Paragraph IV of the complaint and in Paragraph VI of the amended complaint to conform to the proof, was being used by J. W. Heldoorn in or about the maintenance or operation by him of an automobile garage, or sales agency, or service station or repair shop or for business purposes and it is not true that the said automobile was being used at said time solely for personal or pleasure purposes of said J. W. Heldoorn, that it is true that the use of the said automobile by J. W. Heldoorn at the time of the collision alleged in paragraph IV of the complaint and paragraph VI of the amended complaint to conform to the proof was a risk covered and indemnified against by the insurance policy issued by the defendant to said J. W. Heldoorn.

## "XIII.

"That it is true that J. W. Heldoorn, who was the sole assured under the policy of insurance issued by the defendant, and upon which insurance policy this action is based, was himself driving the automobile which caused the injuries to the plaintiff and the death to Alfred W. Wall, but it is not true that he was driving and using it for his own pleasure; that it is true that the driving and use were risks covered and indemnified against by the insurance policy issued by defendant to said J. W. Heldoorn.

"That it is true that the policy of insurance and the only policy of insurance issued by defendant to J. W. Heldoorn, which policy of insurance was issued at San Francisco, California, on the 10th day of April, 1934, was issued and contained the statement in said policy, 'in consideration of the payment of the premium herein provided for and in further consideration of the statements in the Schedule of Statements on the first page hereof and hereby made a part hereof, which Statements Assured, by the acceptance of this policy warrants to be true, except such as are declared to be estimates only', said policy was and is as follows:

" '6. No Company has cancelled or declined to issue or renew workmen's compensation or liability insurance on this risk during the past three years, except as follows: NO EXCEPTIONS.'

"That statement numbered 6 was true and it is not true that the General Casualty Company of America cancelled on or about April 2nd, 1934, its garage liability policy which had been issued by it to said J. W. Heldoorn on or about January 2nd, 1934, that it is true that the General Casualty Company of America prior to April 2nd, 1934, informed E. E. Burgess that they wished to have the policy heretofore issued by them to J. W. Heldoorn placed somewhere else.

"That it is not true that by reason of the statement numbered 6 of said schedule of statements that said policy issued by the defendant to said J. W. Heldoorn was void from its date of issuance.

"That it is true that on or about the 1st day of July, 1934, the defendant advised the said J. W. Heldoorn that the said policy was void from its inception and that it would accept no liability under it and tendered and offered to restore to said J. W. Heldoorn the full amount of the premium upon said policy, but the Court finds that it is not true that there was any false warranties made by said J. W. Heldoorn or by any of his agents or employees to the said defendant and the Court finds that the purported cancellation by the defendant on or about the 1st day of July, 1934, was made after the happening of the accident in which plaintiff was injured and after the liability of the defendant had occurred by reason of the injuries to the plaintiff because of the accident on the 14th day of June, 1934.

"That the Court further finds that the answer 'No Exceptions', in Statement numbered 6 in said policy was filled in by the defendant itself without obtaining any information from the assured J. W. Heldoorn, and without at any time consulting the assured in reference thereto and the Court further finds that the defendant never asked the assured nor did the assured ever state to the defendant that there were no prior cancellations.

"The Court further finds that the general agent of the defendant Employer's Casualty Company, a corporation, in this state was Thomas V. Humphreys Company and that the general agent in this state for the General Casualty Company of America was the same Thomas V. Humphreys Company and that Fletcher M. Slosson was the manager of the said Thomas V. Humphreys Company.

"That it is not true that the said J. W. Heldoorn in procuring and accepting said policy of insurance from the said defendant represented and warranted or made any false statement to the defendant that no insurance company had cancelled any liability insurance on the risk of said J. W. Heldoorn."

During the trial certain objections to the admission of evidence were made and rulings thereon were reserved; but the evidence was admitted. Thereafter the trial court did not expressly rule on said objections. The defendant assigns the failure of the trial court to rule as prejudicial error. As just stated, the evidence was admitted. As it was not later excluded, it is now in the record. The defendant does not specify any single piece of evidence that was so admitted and also specify its objection thereto except as will hereinafter be duly noted. The mere fact that the trial court did not make a specific ruling on each objection was not prejudicial error. (24 Cal. Jur. 776.) As intimated above, if the admission of any part of the evidence was a prejudicial error, such fact should have been specially called to our attention, but the defendant has not made any assignments to that effect.

The defendant asserts that the trial court decided the case contrary to the order of submission. However, such does not appear to be the fact. The taking of testimony was completed on the 10th day of May, 1935. At that

time it was stipulated that the cause would be submitted on briefs, the plaintiff to file his brief in ten days, the defendant to file its brief ten days thereafter, and the plaintiff to have ten days to reply. The first brief was to be filed ten days after the service of the reporter's transcript. As a part of the same proceeding the plaintiff asked permission to file an amended pleading to conform to the proof. Later the plaintiff prepared his amended pleading and his brief. On July 1, 1935, the hearing of the application to file the amended pleading arose. At the same time the defendant filed a written brief. After argument the trial court granted the plaintiff permission to file a reply to the defendant's brief within three days. No other briefs were filed, no order was made extending time and no stipulation was granted extending time. On August 2, 1935, the trial court rendered its decision. Under these circumstances it clearly appears that if the defendant desired to file some additional brief before the decision, it has no one to blame excepting itself.

█ It is next claimed that the evidence is insufficient to support finding number XIII. That finding, it will be noted, treated statement No. 6, which is, "6. No company has cancelled or declined to issue or renew workmen's compensation or liability insurance on this risk during the past three years except as follows: No exceptions." In the finding complained of the trial court found the answer was true and it also found that the insured never made the statement. In division (n) of the policy it is provided that the statements are a part of the consideration of the policy and " . . . which statements the assured, by the acceptance of this policy, warrants to be true, except such as are declared to be estimates only". The defendant quotes the evidence and then argues that, in fact, statement No. 6 was false. An examination of the entire finding discloses that it finds (1) that statement No. 6 was true and (2) that it was the defendant's own statement and not the insured's. If the second division of the finding is supported by the record, it is immaterial that the first division is or is not supported by the evidence. The policy was procured by Mr. Burgess, as broker for the insured, by applying in person to Mr. Slosson, manager for the Humphreys Company which was the general agent of the insurer. No written application was

made. No question was asked by Mr. Slosson and no representation was made by Mr. Burgess on the subject-matter of statement No. 6. On this subject there was no conflict in the evidence. Mr. Burgess testified that he stated all of the facts and asked for complete coverage of J. W. Heldoorn and asked the amount of the premium. He was told the amount and that the policy would be issued. Later it was issued and the premium was paid to and retained by the insurer. On receiving the policy the insured put it away without reading it. Under these circumstances the evidence was properly received and the finding was supported by the evidence. (*Kruger* v. *Western Fire & Marine Ins. Co.*, 72 Cal. 91, 95 [13 Pac. 156, 1 Am. St. Rep. 42]; *Menk* v. *Home Insurance Co.*, 76 Cal. 50, 53 [14 Pac. 837, 18 Pac. 117, 9 Am. St. Rep. 158].) True it is that in both of those cases the representation was of and concerning *known facts*. In *Sharp* v. *Scottish Union etc. Co.*, 136 Cal. 542 [69 Pac. 253, 615], the policy contained a clause limiting the insurance of the insured's interest only when such interest was sole and unconditional. No written application was demanded nor was one made. No statement by the insured was made. No inquiry was made, but said clause was inserted by the agent of the insurer of his own motion. The court held as stated in the syllabus: ''In such case, the company must be presumed to have issued the policy with knowledge of the condition of the title, which was not inquired into, and to have assured the property with such knowledge, and to have waived provisions of the policy inconsistent therewith.'' In *Raulet* v. *Northwestern etc. Ins. Co.*, 157 Cal. 213 [107 Pac. 292], the facts were quite similar to the facts in the instant case. On page 230 the court said:

''The courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent. The defendant should either have made inquiries in reference to the chattel mortgage, required a written application covering by question and answer all the material provisions of the policy, or have consulted the records in the recorder's office where it would have been apprised of the encumbrance. Considering the nature of the contract and the relation of the parties, there should be no difficulty in reaching the conclusion that this provision was waived and it therefore constitutes no

bar to recovery." Finally, in *Davern* v. *American Mut. Liability Ins. Co.*, 241 N. Y. 318 [150 N. E. 129, 43 A. L. R. 522], the court of appeals of New York, speaking of a similar set of facts, said: " . . . obviously there can be no misrepresentation where there was no representation and there can be no breach of warranty without warranty". It follows that the trial court did not err in holding that the defendant did, under the facts in the case before it, waive statement No. 6 and the answer thereto.

■ As a part of its argument on the foregoing, the defendant contends that the insured, and therefore this plaintiff, is estopped because the insured did not read his policy. But where, as here, the insurer makes a promise to write a certain specific coverage, the insured is entitled to rely thereon and the insurer is estopped from taking a different position. It will not be claimed that such is the rule in all jurisdictions (1 Cooley's Briefs on Insurance, 943), but it is the rule in many jurisdictions, including this state. In *McElroy* v. *British America Assur. Co.*, 94 Fed. 990, the Circuit Court of Appeals of the Ninth Circuit considered the point. In the syllabus it is stated: "An insured has the right to rely on the presumption that the policy he receives is in accordance with his application, and his failure to read it will not relieve the insurer or its agent from the duty of so writing it." To the same effect see *Kister* v. *Lebanon Mut. Ins. Co.*, 128 Pa. St. 553 [18 Atl. 447, 450, 15 Am. St. Rep. 696, 5 L. R. A. 646]; *Gristock* v. *Royal Ins. Co.*, 87 Mich. 428 [49 N. W. 634, 635]; *Bennett* v. *Agricultural Ins. Co.*, 106 N. Y. 243 [12 N. E. 609]; *Davern* v. *American Mut. Liability Ins. Co.*, *supra*; *McMaster* v. *New York Life Ins. Co.*, 183 U. S. 25, 39 [22 Sup. Ct. 10, 46 L. Ed. 64]; *California etc. Co.* v. *New Zealand Ins. Co.*, 23 Cal. App. 611, 617 [138 Pac. 960] (petition to transfer denied); *Golden Gate Motor Transport Co.* v. *Great American Indemnity Co.*, 6 Cal. (2d) 439 [58 Pac. (2d) 374]; *Home Ins. Co. of New York* v. *Sullivan Machinery Co.*, 64 Fed. (2d) 765. As stated above, the application was oral and Mr. Burgess asked for, and Mr. Slosson agreed to write, a policy of full coverage both for business and pleasure use by J. W. Heldoorn of the automobiles. Under the foregoing authorities Mr. Heldoorn was not estopped from showing the facts because he held the policy a few weeks

without reading it. Such facts were pertinent evidence but the trier of the facts has found the fact against the defendant. (1 Cooley's Briefs on Insurance, 944.)

It is next asserted by the defendant that there is a total lack of proof to sustain reformation and that the evidence shows there was no meeting of minds on the finding of an executed contract. It is sufficient to state that the plaintiff does not claim he is maintaining an action to reform the contract, but that he is standing thereon. Under the facts of this case a reformation was not necessary to a recovery. (*McMaster* v. *New York Life Ins. Co., supra; Reynolds* v. *Canton Ins. Office,* 98 Wash. 425 [167 Pac. 1115]; *Fitch* v. *Lomax,* (Tex. Com. App.) 16 S. W. (2d) 530, 66 A. L. R. 758, note at 767; *Raulet* v. *Northwestern etc. Ins. Co.,* 157 Cal. 213, 235 [107 Pac. 292].) If the trial court believed the testimony of Mr. Burgess, and from its findings we must assume it did, there could be no question involved regarding the meeting of minds. As shown above the policy contained all covenants agreed upon, but the plaintiff's contention is that it contained provisions not agreed upon. On the trial of such actions a reformation has not been held necessary. The holdings have been, as shown above, that the insurer will be held to have waived or will be estopped from relying on such unauthorized provisions.

The defendant attacks finding number X. It asserts that by the use of the word "if" the trial court failed to find certain facts. Assuming that the finding was not in proper form, the error was immaterial. In the other findings the court found facts showing that J. W. Heldoorn, through his broker, applied for full coverage, that is, coverage of the use of the automobiles by J. W. Heldoorn personally. It was therefore unnecessary to repeat the same subject-matter in finding number X. As all of the facts are before this court, finding number X is changed to read as follows: "That it is true that the provision placed in said policy that it did not cover the driving or use of said automobile by the said J. W. Heldoorn, was inserted without authority of said J. W. Heldoorn and contrary to his contract of insurance with the said defendant."

The judgment appealed from is affirmed.

Nourse, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 25, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 22, 1936.